UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CASE NO.: 1:21-cv-02228-JPB

**EMORY BRANTLEY,**

    **Plaintiff,**

v.

**TIFFIN MOTOR HOMES, INC. and
DAIMLER TRUCKS NORTH
AMERICA, LLC,**

    **Defendants.**

_____/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff EMORY BRANTLEY, by and through his undersigned counsel, and hereby files this Amended Complaint against Defendants TIFFIN MOTOR HOMES, INC. and DAIMLER TRUCKS NORTH AMERICA, LLC and states as follows:

### PARTIES

1. At all times relevant, Plaintiff EMORY BRANTLEY ("BRANTLEY" and/or "Plaintiff") is a Florida resident, Pinellas County, and an individual and was the owner of a 2015 Tiffin Motorhome Allegro Phaeton, VIN No. 4UZACGCY6FCGU8440 (hereinafter referred to as the "subject vehicle").

2. Defendant TIFFIN MOTOR HOMES, INC. ("TIFFIN") is a Foreign Corporation incorporated under the laws of Alabama, with its principal place of

business located at 105 2ND Street NW, Red Bay, AL 35582. At all times relevant, TIFFIN was engaged in the manufacture, sale, and/or distribution of recreational vehicles and related equipment and services as well as marketing, supplying, and selling written warranties to the public at large through a system of authorized dealerships.

3. Defendant DAIMLER TRUCKS NORTH AMERICA, LLC ("DAIMLER") is a Foreign Limited Liability Company, existing under the laws of the State of Delaware, authorized to do business in the State of Georgia, County of DeKalb, with its principal place of business located at 4555 North Channel Avenue, Portland, OR 97217. At all times relevant, DAIMLER was engaged in the manufacture, sale, and/or distribution of chassis, including chassis utilized as part of TIFFIN recreational vehicles. DAIMLER does business in all counties of the State of Georgia including DeKalb County, and maintains a Registered Agent, C T Corporation System, located at 289 S. Culver St., Lawrenceville, GA 30046-4805.

## JURISDICTION AND VENUE

4. The Superior Court Action is a civil action that falls under the Court's original jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff's citizenship is diverse from the citizenship of all Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. The subject incident giving rise to this action occurred in DeKalb County, Georgia.

6. The harm sued upon in this action arose from a vehicle fire that occurred in Georgia.

### *Personal Jurisdiction over TIFFIN exists as Georgia's long-arm statute, O.C.G.A. § 9-10-91, confers jurisdiction over TIFFIN*

7. The alleged tortious injury, suffered by BRANTLEY in Georgia, was caused by an act or omission outside of Georgia by TIFFIN and DAIMLER. which regularly conducts or solicits business or engages in other persistent courses of conduct or derives substantial revenue from goods used or consumed or services rendered in Georgia.

8. TIFFIN sells its vehicles in at least 2 cities in Georgia – Byron and Acworth. *See*, TIFFIN Website Materials "Find A Dealer" – Doc. 14-2.[1]

9. TIFFIN's website contains a tab labeled "Find A Dealer" and brings the user to a map of Tiffin's dealers searchable by state. *Ibid*.

10. When searching for Dealers in Georgia, TIFFIN's website identifies a Campers Inn RV dealership located at 125 Peachtree Parkway, Byron, GA 31008 and another Campers Inn RV dealership located at 5961 Woodstock Road, Acworth, GA 30102. *Ibid*.

11. TIFFIN vehicles are then sold directly to the public at these TIFFIN Dealers. *See,* Campers Inn Website Materials – Doc. 14-3.[2]

---

[1] https://tiffinmotorhomes.com/dealer-locator
[2] https://www.campersinn.com/product-tiffin-motorhomes

12. The Acworth location lists 37 new and used TIFFIN vehicles available for sale, including an Allegro model like the one at issue in this litigation. *Ibid*.

13. Similarly, the Macon location lists 12 new and used TIFFIN vehicles available for sale, also including an Allegro model like the one at issue in this litigation. *Ibid.*

14. Moreover, the Campers Inn of Macon-Byron, Inc. is registered to do business in Georgia with a Registered Agent, Jeffrey M. Hirsch, located at 125 Peachtree Parkway, Byron, GA 31008. *See,* attached record from Georgia Corporations Division – Doc. 14-4.[3]

15. TIFFIN also solicits business through its website by actively connecting with consumers, including Georgia residents.

16. Through TIFFIN's website, a consumer in Georgia can contact TIFFIN directly, exchange information with TIFFIN regarding products and services, schedule roadside assistance, contacting TIFFIN's Main Office for assistance with "brochures, current models, questions about the current model lineup, locating a Tiffin dealer, [and] planning a factory visit," and contacting TIFFIN's Service Center for assistance with "Visits to Red Bay Service Center, request technical assistance, [and] your Tiffin warranty." *See,* TIFFIN Website Materials "Contact Us" attached hereto – Doc. 14-5.[4]

***The exercise of personal jurisdiction over TIFFIN would not violate the Due Process Clause of the Fourteenth Amendment***

---

[3] https://ecorp.sos.ga.gov/BusinessSearch/BusinessInformation?businessId=1347593&businessType=Domestic%20Profit%20Corporation&fromSearch=True
[4] https://tiffinmotorhomes.com/contact-us

17. "The Due Process Clause of the Fourteenth Amendment sets the outer boundaries of a state tribunal's authority to proceed against a defendant." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011).

18. As outlined above, TIFFIN sells its vehicles, including model similar to the model at issue, in two Georgia Dealer locations and directs consumers to those locations through TIFFIN's own website. *See*, – Doc. 14-2, 14-3, 14-4.

19. TIFFIN also solicits business through its website by actively connecting with consumers, including Georgia residents. *See*, – Doc. 14-5.

20. In sum, TIFFIN has substantial contacts with Georgia that are "continuous and systematic" enough to render TIFFIN at home in the forum.

21. Moreover, the connection between Brantley's claims and Tiffin's activities in Georgia "is close enough to support specific jurisdiction." *See, Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.,* 141 S. Ct. 1017, 1019, 209 L. Ed. 2d 225 (2021).

22. TIFFIN's activities in and directed toward Georgia, as set out above, establish that TIFFIN clearly targeted the State of Georgia and purposefully availed itself of the privilege of conducting business activities within the State of Georgia so as to satisfy the 'minimum contacts prong of the specific jurisdiction analysis.

23. Likewise, TIFFIN's activities in and directed toward Georgia are also sufficiently "related to" Plaintiff's claims.

24. TIFFIN's vehicles are marketed and available for purchase from at least two dealers in Georgia, through TIFFIN's own website directing consumers to its Georgia Dealers. *See*, TIFFIN Website Materials "Find A Dealer."

25. Although the specific number of Georgia product sales is unknown at this time, the extensive availability of TIFFIN vehicles in Georgia demonstrates that Plaintiff's claims, at a minimum, are "related to" TIFFIN's Georgia contacts.[5]

26. TIFFIN advertises and solicits business in Georgia through its website.

27. TIFFIN definitely has a business presence in Georgia and is therefore subject to general jurisdiction in its courts.

28. TIFFIN has sufficient minimum contacts with Georgia to establish personal jurisdiction in this case.

29. It would not be burdensome for TIFFIN to litigate in a state where it solicits and does business.

30. TIFFIN has already retained local counsel to represent it in this matter.

31. Georgia has an interest in resolving a dispute arising from a vehicle fire that occurred within its border.

32. Plaintiff has selected this forum to resolve the matter and there is no reason why it would be inefficient for this Court to adjudicate the case.

33. Therefore, asserting jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. 310, 316.

34. Further, it is not altogether clear whether another forum would be more appropriate as Defendant DAIMLER has not contested jurisdiction and maintains a

---

[5] The sale and distribution of the Tiffin vehicle model at issue in this case as well as the sale and distribution of other products in Georgia will be areas of inquiry for further discovery.

Registered Agent in Lawrenceville, GA and is authorized to and does business sin the State of Georgia.

## FACTUAL ALLEGATIONS

35. On or about April 21, 2015, BRANTLEY purchased the subject vehicle, which was manufactured and distributed by TIFFIN and included a chassis manufactured by DAIMLER, for valuable consideration from LAZY DAYS RV OF TAMPA.

36. The price of the subject vehicle, including all collateral charges, registration charges, document fees, sales tax, bank charges and finance charges, totaled approximately $284,675.25.

37. On or about April 21, 2015, BRANTLEY took possession of the subject vehicle and later experienced defects that substantially impaired the use, value, and/or safety of the subject vehicle.

38. On July 28, 2019, BRANTLEY parked the subject vehicle at the Stone Mountain Campground located at or near 4003 Stonewall Jackson Dr, Stone Mountain, GA 30083.

39. Approximately one hour later, BRANTLEY smelled smoke and saw flames coming out of the rear of the subject vehicle, in or near the engine compartment.

40. The subject vehicle was quickly and fully engulfed in flames which caused extensive damage to the subject vehicle and resulted in a total loss of the subject vehicle and BRANTLEY'S personal contents.

41. Subsequent investigation revealed that the fire originated from the chassis area on the subject vehicle, specifically, the area of the starter cable and power steering line.

42. Subsequent investigation also revealed that the cause of the fire was an incorrectly routed power steering line and/or starter cable which caused them to come into direct contact with one another.

43. The friction resulting from the direct contact between the steel-braided power steering line and the starter cable caused the insulation on the starter cable to wear out exposing the underlying bare copper.

44. Electrical arcing from the starter cable's exposed copper to the power steering line ignited the power steering fluid and caused the fire.

45. BRANTLEY justifiably lost confidence in the subject vehicle's safety and/or reliability and said defects have substantially impaired the value of the subject vehicle to BRANTLEY.

46. Said defects could not have reasonably been discovered by BRANTLEY prior to BRANTLEY's acceptance of the subject vehicle.

47. As a result of the fire, BRANTLEY has incurred damages in the amount of $206,692.95 for the damage to the subject vehicle and additional damages in the amount of $27,004.65 for damage to his personal property.

48. All conditions precedent to the maintenance of this action either have occurred, have been satisfied, or have been waived.

**COUNT I – NEGLIGENCE AGAINST TIFFIN**

49. Plaintiff re-alleges and incorporates by reference as though fully set forth herein, paragraphs 1-48 of this Complaint.

50. At all times relevant hereto, TIFFIN had a duty to exercise reasonable care in manufacturing, designing, constructing, assembling, packaging, and/or distributing vehicles and vehicle parts, including but not limited, to the subject vehicle.

51. TIFFIN breached this duty, by and through its employees, agents, and/or representatives, by acting negligently in one or more of the following ways:

    a. Failed to exercise ordinary care or skill in the manufacturing or assembly of the subject vehicle;

    b. Failed to exercise ordinary care or skill in the design of the subject vehicle;

    c. Failed to exercise ordinary care or skill in the marketing of the subject vehicle;

    d. Failed to exercise ordinary care or skill in repair and/or servicing of the subject vehicle;

    e. Failed to exercise ordinary care or skill in the testing of the subject vehicle;

    f. Failed to exercise ordinary care or skill in the inspection of the subject vehicle;

    g. Failed to assure that the subject vehicle was safe for its intended use;

    h. Failed to correct and/or remedy known defects and/or known dangerous conditions within the subject vehicle; and/or

    i. Was otherwise careless and negligent in the manufacturing, designing, constructing, assembling, packaging, and/or

distributing the subject vehicle.

52. As a direct and proximate result of the negligent acts and/or omissions on the part of TIFFIN, a fire originated within the subject vehicle, causing extensive damage.

53. As a result of the fire, BRANTLEY has incurred damages in the amount of $206,692.95 for the damage to the subject vehicle and additional damages in the amount of $27,004.65 for damage to his personal property.

## COUNT II – STRICT PRODUCTS LIABILITY AGAINST TIFFIN

54. Plaintiff re-alleges and incorporates by reference as though fully set forth herein, paragraphs 1-48 of this Complaint.

55. At all times relevant, the subject vehicle was defective and/or unreasonably dangerous when it left the control of TIFFIN and was placed into the stream of commerce.

56. At all times relevant, the subject vehicle reached BRANTLEY without any alteration or substantial change.

57. At all times relevant, the subject vehicle was used in a reasonably foreseeable and normal manner and BRANTLEY was a prudent and diligent vehicle owner who kept a well-maintained vehicle, taking the subject vehicle to be serviced for regular maintenance and/or whenever an issue occurred.

58. When the subject vehicle left the control of TIFFIN and was placed into the stream of commerce, it was defective and/or unreasonably dangerous, in light of its foreseeable and intended use, in one or more of the following ways:

    a.    The subject vehicle contained one or more manufacturing defects, including an incorrectly routed power steering line and/or starter cable, which resulted in a fire;

    b.    The subject vehicle contained one or more design defects, including an incorrectly routed power steering line and/or starter cable, which resulted in a fire;

    c.    The subject vehicle was distributed and/or sold with insufficient and/or improper warnings regarding the risk of fire associated with the subject vehicle;

    d.    The subject vehicle was distributed and/or sold with insufficient and/or improper instructions regarding the proper use and/or maintenance of the subject vehicle; and/or

    e.    The subject vehicle was otherwise designed, manufactured, distributed and/or sold in such a way as to introduce into the stream of commerce and provide its intended users with an unreasonably dangerous and defective product.

59.    As a direct and proximate result of one or more of the aforementioned defects and/or unreasonably dangerous conditions of the subject vehicle, a fire originated from and within the subject vehicle causing extensive damage.

60.    As a result of the fire, BRANTLEY has incurred damages in the amount of $206,692.95 for the damage to the subject vehicle and additional damages in the amount of $27,004.65 for damage to his personal property.

## COUNT III – NEGLIGENCE AGAINST DAIMLER

61.    Plaintiff re-alleges and incorporates by reference as though fully set forth herein, paragraphs 1-6; 35-48 of this Complaint.

62.    At all times relevant hereto, DAIMLER had a duty to exercise reasonable care in manufacturing, designing, constructing, assembling, packaging,

and/or distributing chassis, including but not limited, the chassis of the subject vehicle.

63. DAIMLER breached this duty, by and through its employees, agents, and/or representatives, by acting negligently in one or more of the following ways:

   a. Failed to exercise ordinary care or skill in the manufacturing or assembly of the subject chassis;

   b. Failed to exercise ordinary care or skill in the design of the subject chassis;

   c. Failed to exercise ordinary care or skill in the marketing of the subject chassis;

   d. Failed to exercise ordinary care or skill in repair and/or servicing of the subject chassis;

   e. Failed to exercise ordinary care or skill in the testing of the subject chassis;

   f. Failed to exercise ordinary care or skill in the inspection of the subject chassis;

   g. Failed to assure that the subject chassis was safe for its intended use;

   h. Failed to correct and/or remedy known defects and/or known dangerous conditions within the subject chassis; and/or

   i. Was otherwise careless and negligent in the manufacturing, designing, constructing, assembling, packaging, and/or distributing the subject chassis.

64. As a direct and proximate result of the negligent acts and/or omissions on the part of DAIMLER, a fire originated within the subject vehicle, causing extensive damage.

65. As a result of the fire, BRANTLEY has incurred damages in the amount of $206,692.95 for the damage to the subject vehicle and additional damages in the amount of $27,004.65 for damage to his personal property.

**COUNT IV – STRICT PRODUCTS LIABILITY AGAINST DAIMLER**

66. Plaintiff re-alleges and incorporates by reference as though fully set forth herein, paragraphs 1-6; 35-48 of this Complaint.

67. At all times relevant, the subject chassis was defective and/or unreasonably dangerous when it left the control of DAIMLER and was placed into the stream of commerce.

68. At all times relevant, the subject vehicle, including the subject chassis, reached BRANTLEY without any alteration or substantial change.

69. At all times relevant, the subject vehicle, including the subject chassis, was used in a reasonably foreseeable and normal manner and BRANTLEY was a prudent and diligent vehicle owner who kept a well-maintained vehicle, taking the subject vehicle to be serviced for regular maintenance and/or whenever an issue occurred.

70. When the subject chassis left the control of DAIMLER and was placed into the stream of commerce, it was defective and/or unreasonably dangerous, in light of its foreseeable and intended use, in one or more of the following ways:

   a. The subject chassis contained one or more manufacturing defects, including an incorrectly routed power steering line and/or starter cable, which resulted in a fire;

   b. The subject chassis contained one or more design defects,

    including an incorrectly routed power steering line and/or starter cable, which resulted in a fire;

  c. The subject chassis was distributed and/or sold with insufficient and/or improper warnings regarding the risk of fire associated with the subject chassis;

  d. The subject chassis was distributed and/or sold with insufficient and/or improper instructions regarding the proper use and/or maintenance of the subject chassis; and/or

  e. The subject chassis was otherwise designed, manufactured, distributed and/or sold in such a way as to introduce into the stream of commerce and provide its intended users with an unreasonably dangerous and defective product.

71. As a direct and proximate result of one or more of the aforementioned defects and/or unreasonably dangerous conditions of the subject chassis, a fire originated from and within the subject vehicle causing extensive damage.

72. As a result of the fire, BRANTLEY has incurred damages in the amount of $206,692.95 for the damage to the subject vehicle and additional damages in the amount of $27,004.65 for damage to his personal property.

WHEREFORE Plaintiff EMORY BRANTLEY respectfully requests that Judgment be entered in his favor and against Defendants TIFFIN MOTOR HOMES, INC. and DAIMLER TRUCKS NORTH AMERICA, LLC in the amount of $233,697.60, plus costs, and for such other or further relief as this Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiff EMORY BRANTLEY hereby demand Trial by Jury in this matter for all matters so triable.

Respectfully submitted on this 28th day of February 2022.

        /s/ Joseph C. Proulx
        Joseph C. Proulx, Esq.
        Georgia Bar No.: 832707
        **GOLDEN SCAZ GAGAIN, PLLC**
        1135 Marbella Plaza Drive
        Tampa, Florida 33619
        Phone:  (813) 251-5500
        Fax:  (813) 251-3675
        jproulx@gsgfirm.com
        *Attorneys for Plaintiff*